UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60212-CIV-ROSENBERG/BRANNON

ELEPHANT GROUP INC.,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA; AIG
PROPERTY CASUALTY COMPANY; and
AMERICAN INTERNATIONAL GROUP, INC.,

    Defendants.
_____/

**DEFENDANTS' "EXPEDITED" RESPONSE TO MOTION
FOR LEAVE TO AMEND PLAINTIFF'S COMPLAINT**

As directed by this Court's March 23, 2016 Endorsed Order (ECF No. 22), defendants National Union Insurance Company of Pittsburgh, Pa. ("National Union"), American International Group, Inc. ("AIG, Inc."), and AIG Property Casualty Company ("AIGPCC") submit this "expedited" response to plaintiff's Motion. This is a simple coverage case, despite plaintiffs' efforts to make it otherwise. By its Motion for Leave to Amend Plaintiff's Complaint (ECF No. 21; the "Motion" or "Motion for Leave"), plaintiff Elephant Group, Inc. seeks to interject counts, parties, and legal issues (including jurisdictional issues) that do not belong here. For the reasons below, the Court should deny this Motion for Leave or, in the alternative, defer ruling so that it may consider briefing and evidence regarding the jurisdictional issues.

    ***1.    Plaintiff's proposed new counts are duplicative and otherwise improper***

Among other things, the proposed amended complaint seeks to add duplicative counts. Indeed, plaintiff's operative Complaint (ECF No. 1-1) acknowledges, in the context of this case, that bad faith and breach of the implied covenant of good faith are synonymous, asserting both concepts in Count III. *See* Compl. ¶ 103 (alleged Defendants engaged in 'bad faith' or 'breach of implied covenant of good faith'"). Now, after acknowledging that it is appropriate to abate

Count III (ECF No. 20 at 2 ("Elephant Group acknowledges that [Count III] should be abated until after this Court adjudicates insurance coverage.")), plaintiff proposes additional counts that are mere re-castings of this count – *e.g.*, breach of fiduciary duty (proposed Count IV) and breach of implied covenant of good faith and fair dealing (proposed Count V). *See* Proposed Am. Compl. ¶ 190 (alleging that the fiduciary duty count merely alleges that defendants did not "act in good faith or deal fairly in making coverage determinations" or while "negotiating the settlement of claims[.]").

There is simply no reason to have these additional counts.[1] As plaintiff is well aware, there are two claims appropriately before this Court:

- The first is an insurance coverage claim, *i.e.*, whether plaintiff's insurer breached coverage obligations under an insurance policy; and

- The second is a contingent insurer bad faith claim, *i.e.*, if the insurer should have provided coverage, whether the denial of coverage was in bad faith.

Dividing two claims into five counts, adds unnecessary confusion and complication to the case and adversely impacts the interests of justice. *See Anderson v. Dist. Bd. of Trs. of Central Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").[2] According these counts should be rejected as duplicative. *E.g., Harrison v. Digital Health Plan*, 183 F.3d 1235, 1237 n.1 (11th Cir. 1999) (affirming dismissal duplicative count).

---

[1] For that matter, pleading two counts for coverage – Count I (for declaration) and Count II (for damages) – is also unnecessary.

[2] While, unlike this case, *Anderson* involved a classic "shotgun"-style pleading, the sentiment holds true given plaintiff here seeks to assert unnecessarily redundant claims and, as discussed below, improperly lump individual defendants together as a single "Insurer" when they know that is not the case.

> **2.      *The Court should not permit joinder of National Union's claims administrator or allow plaintiff to persist with litigation claims against National Union's ultimate corporate parent***

Of greater concern here is the insistence of plaintiff (a Delaware corporation) on pursuing claims against non-diverse corporate entities that are not its insurer.  The improper joinder of AIG, Inc. – the Delaware-incorporated parent of the parent of the parent of the parent of the parent of plaintiff's insurer National Union – is discussed at length in the removal notice (ECF No. 1) and reinforced in the dismissal motion (ECF No. 9).  Defendants are preparing an evidentiary submission to support the well-pled factual allegations in its removal notice;[3] and, as the dismissal motion (and forthcoming reply memorandum) demonstrate, claims against AIG, Inc. should be dismissed for failure to state a claim and lack of personal jurisdiction.

Now, however, plaintiff seeks to join Delaware-incorporated AIG Claims, Inc. (National Union's claims administrator).  This Court should not allow plaintiff to join AIG Claims, Inc.: (a) because it is not a proper party to the action and (b) because allowing joinder may divest this Court of subject matter jurisdiction (which is likely plaintiff's intent).  These two points are discussed below.

> **a)      The Court should deny joinder of AIG Claims, Inc. because is not a proper party**

Plaintiff's claims are only properly pled against its insurer.  From the Dismissal Motion at Part I.B. (which plaintiff concedes is correct, *see* ECF No. 20 at 6):

> It is hornbook law that a claim for breach of contract (as alleged in Count I and II) requires privity of contract.  In order to state a claim for breach of contract a party must allege that:  (1) "[t]he parties enter into a contract containing certain terms"; (2) "[t]he plaintiff did what the contract required the plaintiff to do"; (3) "[t]he defendant did not do what the contract required the defendant to do"; and (4) "[t]he defendant's breach, or failure to do what the contract required, caused a

---

[3] As *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) provides, 28 U.S.C. § 1446(a) tracks general pleading requirements of Federal Rule of Civil Procedure 8(a) and thus requires only a "short and plain statement of the grounds for removal."  If jurisdiction is contested, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the [jurisdictional] requirement has been satisfied." *Id*. at 554.

loss to the plaintiff." N.J. Civ. Model Jury Charges § 4.10A; *Pub. Serv. Enter. Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 219 (D.N.J. 1989); *Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 448 (D.N.J. 1999); *see also In re Cendant Corp. Sec. Litig.*, 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001). Here, there cannot be a claim for breach of the National Union Policies by [the non-insurer defendants] because neither entered into those contracts with Plaintiff and thus neither had contractual obligations to Plaintiff that it failed to meet. Instead, these counts may only be directed at National Union, the insurer on the Policies. *See Pegg v. USAA*, 2009 WL 2928920, at *2 (D.N.J. Sept. 9, 2009) ("It is crystal clear that, under New Jersey law, an insured party may only assert a breach of contract action against the insurance carrier who issued the policy of insurance.") (citations omitted).

Count III is likewise defective. There are three elements to state a claim for insurer bad faith or breach of implied covenant of good faith as to [the non-insurer defendants]: (1) a contract must exist between Plaintiff and those defendants; (2) those defendants must have acted with bad motive or intention to deprive Plaintiff of right or benefits under the contract; and (3) such conduct must have caused Plaintiff injury, damage, loss, or harm. N.J. Civ. Model Jury Charges § 4.10J; *Wade v. Kessler Institute*, 798 A.2d 1251, 1262 (N.J. 2002) (There can be no breach of the implied covenant of good faith and fair dealing in the absence of a contract between the parties.). Thus, this bad faith count similarly can only be brought against the insurer (*i.e.*, National Union) that purportedly failed to meet its contractual obligations and allegedly did so in bad faith. *E.g., Pickett v. Lloyd's*, 621 A.2d 445, 453-54 (N.J. 1993) (To sustain a claim against defendant for insurer bad faith, defendant must first be liable on the underlying insurance coverage claim.); *Hudson Universal, Ltd. v. Aetna Ins. Co.*, 987 F. Supp. 337, 342 (D.N.J. 1997); *Sandalwood Estates Homeowner's Ass'n v. Empire Indem. Ins. Co.*, 665 F. Supp. 2d 1355, 1360 (S.D. Fla. 2009) (without contractual relationship, action for bad faith cannot lie).

Because [the non-insurer defendants] were not parties to the National Union Policies, had no obligations under those Policies, and did not (and could not) breach those Policies (in bad faith or otherwise), the Complaint plainly fails to state a claim against them.

ECF No. 9 at 4-6 (footnote omitted); *see also* 6-8 (addressing alter-ego liability theory).

The proposed Amended Complaint attempts to rope AIG Claims, Inc. into the case by improperly lumping all defendants into the defined terms "Insurer," "Defendants," "AIG" and "Chartis." The practice of "group pleading" by lumping multiple defendants together is disfavored by the courts. As the Eleventh Circuit has explained: "In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant;

4

generalized allegations 'lumping' multiple defendants together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)); *see also Gibbs v. U.S.*, 865 F. Supp. 2d 1127, 1151 (M.D. Fla. 2012) (same).

Plaintiffs' counsel has represented that he is an experienced insurance litigator (and former insurance company executive) and well understands that, for marketing and other purposes, operating insurance companies and affiliated entities often use a single brand name – like AIG, Chartis, Assurant, Chubb, Continental, etc. The use of such a brand does not magically transform the scores of corporations into a single entity nor does the appearance of the brand on the policies or marketing materials make them all plaintiff's insurer. *See* Dismissal Motion (ECF No. 9) at 8 & n.6 (collecting authority regarding this point).

The proposed amended pleading makes a number of specious assertions to support the notion that – despite the Policies' plain language – National Union is not the only insurer. For example, it falsely claims that same two sheets of marketing materials and a "Policyholder Notice" placed in front of each Policy are part of that contract (ECF No. 21-1, pp. 43-45, 114-16), even though the Policies expressly, and repeatedly, make clear that National Union is the only insurer (*see* ECF No. 8 at 2-3 & Figure 1 (below) (collecting policy references to National Union as the lone insurer)).



*Figure 1 – Examples of Policy References to National Union as the insurer*

5

| | |
|---|---|
| ECF No. 1-1 at 95 Policy Decl., item 4 | 4. NAME AND ADDRESS OF INSURER<br>National Union Fire Insurance Company of Pittsburgh, Pa.<br>175 Water Street<br>New York, NY 10038-4969<br><br>This Policy is issued only by the insurance company indicated in this Item 4. |
| ECF No. 1-1 at 98 Definition (k) | (k) "Insurer" means the insurance company indicated in the Declarations. |
| | Policy references to defined term "we":<br><br>ECF No. 1-1, pp. 27 (7 references), 28 (2 references), 32 (2 references), 35 (5 references), 36 (4 references), 37 (3 references), 28 (2 references), 39 (8 references), 40, 43 (4 references), 47, 48, 49 (3 references), 50, 53, 56 (9 references), 57 (6 references), 58, 59, 62 (2 reference), 63 (6 references), 64 (6 references), 65 (3 references), 67, 69, 78 (2 references), 79, and 81<br><br>Policy references to defined term "insurer":<br><br>ECF No. 1-1, pp. 24, 26, 28, 35, 36, 37, 40 (2 references), 48, 55, 56, , 61, 63, 75 (2 references), 79 (3 references), 81 (2 references), 82 (2 references), 86 (3 references), 96 (2 references), 97 (4 references), 98 (2 references), 99 (5 references), 100 (5 references), 101 (11 references), 102 (7 references), 103 (13 references), 104 (9 references), 105 (11 references), 106 (6 references), 110 (3 references), 111, 112 (3 references), 113 (3 references), 114, 115 (7 references), 116 (2 references), 117, 118 (6 references), 119 (6 references), 120 (11 references), 121 (3 references), 122, 123 (2 references), 125, 126 (11 references), 127 (4 references), 128 (2 references), 132 (5 references), 133 (5 references), 137 (5 references), 138 (3 references), 140 (4 references), 144 (2 references), and 146 (3 references) |
| ECF No. 1-1 at 24 2010-11 Policy Decl. | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |
| ECF No. 1-1 at 27 Base Module | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |
| ECF No. 1-1 at 42 MPL Module | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |
| ECF No. 1-1 at 43 SEC/PRV Module | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |
| ECF No. 1-1 at 49 Cyber-Extortion Module | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |
| ECF No. 1-1 at 50 Media Module | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |
| ECF No. 1-1 at 53 Information Asset Coverage Module | National Union Fire Insurance Company of Pittsburgh, Pa.®<br>A capital stock company |

| | |
|---|---|
| ECF No. 1-1 at 59 Business Interruption Coverage Module | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 66 Internet Pro Module | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 67 CM Module | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 71 Endorsement # 1 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 72 Endorsement # 2 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 74 Endorsement # 3 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 75 Endorsement # 4 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 76 Endorsement # 5 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 78 Endorsement # 6 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 79 Endorsement # 7 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 80 Endorsement # 8 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 81 Endorsement # 9 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 83 Endorsement # 10 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 84 Endorsement # 11 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 86 Endorsement # 12 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 87 Endorsement # 13 | by National Union Fire Insurance Company of Pittsburgh, Pa. |
| ECF No. 1-1 at 88 Endorsement # 14 | by National Union Fire Insurance Company of Pittsburgh, Pa. |

111154344.3

| | |
|---|---|
| ECF No. 1-1 at 90 Claim Reporting Form | Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 95 2011-12 Policy Decl. | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 97 Specialty Risk Protector General Terms & Conditions | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 105 SPL Coverage Section | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 110 Cyber-Extortion Coverage Section | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 112 Event Management Coverage Section | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 116 Network Interruption Coverage Section | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 120 Security & Privacy Coverage Section | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 126 Media Content Coverage Section | National Union Fire Insurance Company of Pittsburgh, Pa.® A capital stock company |
| ECF No. 1-1 at 132 Endorsement # 1 | by    *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 133 Endorsement # 2 | by    *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 134 Endorsement # 3 | by    *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 135 Endorsement # 4 | by    *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 136 Endorsement # 5 | by    *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 139 Endorsement # 6 | by    *National Union Fire Insurance Company of Pittsburgh, Pa.* |

111154344.3

| | | |
|---|---|---|
| ECF No. 1-1 at 139 Endorsement # 7 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 140 Endorsement # 8 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 141 Endorsement # 9 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 142 Endorsement # 10 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 143 Endorsement # 11 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 144 Endorsement # 12 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 145 Endorsement # 13 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 146 Endorsement # 14 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 147 Endorsement # 15 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 148 Endorsement # 16 | by | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 149 Claim Reporting Form | Issuing Company: | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| ECF No. 1-1 at 150 Claim Reporting Form | Issuing Company: | *National Union Fire Insurance Company of Pittsburgh, Pa.* |

Plaintiff's continued assertion that AIG Claims, Inc. or any other AIG entities, is "insurer" on the Policies is made all the more unreasonable by the claim correspondence plaintiff attaches to its Motion to Leave, which make clear that the National Union is the insurer and the claims administration is on its behalf. *E.g.*, ECF No. 21-1 at 31, 35, 37-39 & Figure 2 (below) (indicating that claims administrator is acting as "authorized representing of National Union", that National Union issued the Policy, that the claims administrator is advising the insured "on behalf of National Union", and that the coverage position is National Union's).

***Figure 2 – Examples From Claims Correspondence Plaintiff Cites***

| | |
|---|---|
| ECF No. 21-1 at 31 | Dear Mr. Bamira:<br><br>Chartis Claims, Inc. is the authorized representative for National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued Specialty Risk Protector Policy No. 01-330-97-09, with effective dates of November 9, 2011 to November 9, 2012, to Elephant Group, Inc. ("Elephant Group"). As you know, I am the adjustor handling this matter and all future correspondence should be directed to my attention. The purpose of this letter is to advise you, on behalf of National Union, of our position regarding insurance coverage as it relates to the |
| ECF No. 21-1 at 38 | National Union's coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by National Union or any of its affiliates. National Union expressly reserves all of its rights under the Policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted. |
| ECF No. 21-1 at 39 | Dear Mr. Bamira:<br><br>As you may recall, Chartis Claims, Inc. is the authorized representative for National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued Specialty Risk Protector Policy No. 01-330-97-09 (the "Policy"), with effective dates of November 9, 2011 to November 9, 2012, to Elephant Group, Inc. ("Elephant Group").<br><br>By letter dated May 25, 2012, National Union set forth it's coverage position regarding the Third Party Complaint filed by defendant ADT Services against Elephant Group in the class-action lawsuit titled, *Vishva Desai et al. v ADT Security Services, Inc.* Case No. 1:11 cv-1925, filed in the United States District Court for the Northern District of Illinois (the Third Party complaint is referred to hereinafter as the "ADT Suit").<br><br>We have now had an opportunity to review pleadings and other materials relating to this matter. We are writing to supplement our prior letter and to identify certain additional coverage issues presented by the ADT Suit. As explained below, National Union is constrained to inform you that there is no defense or indemnity coverage under the Policy for this matter. Once you have had an opportunity to review the contents of this letter, please contact us to discuss the further handling of this claim. |

Further, rejection of National Union's claims administrator as a proper defendant is consistent with considerable authority holding administrators are not proper parties to coverage/bad faith cases. *See, e.g., Brand v. AXA Equitable Life Ins. Co.*, 2008 WL 4279863, *5 (E.D. Pa. Sept. 16, 2008) (claim administrator "has no contractual relationship with [the insured]" and should not be "considered an insurer which [the insured] is entitled to sue for breach of contract or bad faith."); *Wm. Powell Co. v. Nat'l Indem. Co.*, 141 F. Supp. 3d 773, 782 (S.D. Ohio 2015) (our courts "have specifically noted that a bad faith claim arises out of the

10

contractual relationship between the insurer and the insured and have consistently rejected bad faith claims where the parties are not in privity with each other."); *Velastequi v. Exchange Ins. Co.*, 505 N.Y.S. 2d 779, 780-82 (N.Y. Civ. Ct. 1986) (no duty is "owed by owed by an independent investigator or adjustor, retained by an insurance company, to the holder of the insurance policy issued by said company"). Because it is not a party to the contract and, as such, not responsible to plaintiff for any breach (in bad faith or otherwise), it should not be joined here.

> b) **Section 1447(e) grants discretion to deny joinder where, as here, permitting joinder would divest the Court of jurisdiction**

In circumstances where "after removal[,] the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction," the Court is within its discretion (if otherwise appropriate) to either (1) "deny joinder," or (2) "permit joinder and remand the action to the State court." *See* 28 U.S.C. § 1447(e). As Judge Merryday explains:

> Section 1447(e) requires weighing a defendant's interest in retaining the federal forum against the interest in avoiding the waste attending parallel federal and state litigation. *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). In balancing these interests, "the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether [the] plaintiff has been dilatory in asking for amendment, whether [the] plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182; *Sharp v. Wal-Mart Stores, Inc.*, No. 06-817, 2007 WL 215644, *2-3 (S.D. Ala. Jan. 25, 2007) (citing *Hensgens*, 833 F.2d at 1182). However "the parties do not start out on an equal footing. This is because of the diverse defendant's right to choose between a state or federal forum. Giving diverse defendants the option of choosing the federal forum is the very purpose of the removal statutes." *Sexton v. G & K Servs., Inc.*, 51 F. Supp. 2d 1311, 1313 (M.D.Ala.1999) (citing *Hensgens*, 833 F.2d at 1181).

*Burr v. Philip Morris, USA*, 2008 WL 2229689, at *1 (M.D. Fla. May 28, 2008).

Here, as in *Burr*, the totality of the *Hensgen* factors, and the equities, weigh against joinder. First, destroying subject matter jurisdiction is a principal motivation for seeking amendment to add this non-diverse defendant shortly after removal and before discovery has taken place. *See Burr*, 2008 WL 2229689, at *2 ("These circumstances strongly evidence the proposed amendment's intention, first and foremost, to defeat federal jurisdiction.") (citing *Smith*

11

*v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002); *Vazquez v. Lowe's Home Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 2777, at 3-4, 2007 WL 128823 (M.D. Fla. Jan. 11, 2007); *In re Norplant Contraceptive Prods. Liability Litig.*, 898 F. Supp. 429, 432 (E.D. Tex. 1995); *see also Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir.1999) ("Especially where . . . a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction.")).  Moreover, there is no significant prejudice to plaintiff from denial of the amendment (it can get all the relief to which it is entitled (if any) from National Union), and allowing amendment accomplishes no judicial economy.  If anything, remand under these circumstances would harm defendants as it would eliminate the parties' trial setting and pretrial schedule and put the parties back to square one in front of a new judge.  Thus, "the equities" in this case, as in *Burr*, "favor preserving [the defendants'] choice of a federal forum."  *Burr*, 2008 WL 2229689, at *2.

### 3. *Alternatively, if the Court is not inclined to immediately deny this Motion, it should postpone ruling until the parties have presented jurisdictional evidence*

For the reasons above, the Court should immediately deny the Motion for Leave.  In the alternative, because of the jurisdictional implications of allowing joinder of a new defendant incorporated in the same state as plaintiff, the Court may also postpone ruling on the Motion for Leave pending briefing and presentation of jurisdiction-related evidence.  *See supra* note 3 (citing *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (if jurisdiction is contested post removal, the parties must submit evidence for a determination by the Court regarding its jurisdiction)).

### CONCLUSION

Based on the foregoing, defendants request an Order denying plaintiff's Motion for Leave and granting such other relief as the Court deems just and appropriate.

12

Respectfully submitted,

/s/ *Jason P. Kairalla*

Steven J. Brodie (Fla. Bar No. 333069)
sbrodie@carltonfields.com
Jason P. Kairalla (Fla. Bar No. 594601)
jkairalla@carltonfields.com
Daniel G. Enriquez (Fla. Bar No. 85864)
denriquez@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 31st day of March 2017, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

Scott A. Mager, Esq.
Elizabeth Olivia Hueber, Esq.
MAGER PARUAS, LLC
2719 Hollywood Boulevard, First Floor
Hollywood, Florida 33020
Telephone:  (954) 763-2800
Facsimile:  (954) 653-4645

*Attorneys for Plaintiff*

/s/ *Jason P. Kairalla*